# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAMIRO RODRIGUEZ (2018-0430005), | |
| Plaintiff, | Case No. 1:19-cv-5587 |
| | Hon. Sara L. Ellis |
| vs. | JURY TRIAL DEMANDED |
| MS. MOHAMMAD, *et al.*, | |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff Romiro Rodriguez, complains against Defendants as follows:

### THE PARTIES

1. Romiro Rodriguez is a resident of Cook County, Illinois, currently incarcerated by the Cook County Department of Corrections. He is currently housed in Division 6-2K-9-1.

2. Defendant John Doe is a paramedic ("Paramedic Doe"), who works for the Cook County Department of Corrections. Paramedic Doe is a Caucasian male. Paramedic Doe was working at the Cook County Jail on the late morning hours on July 2, 2019. This Amended Complaint adds Paramedic Doe as a defendant based on the conduct alleged below. Upon information and belief, Paramedic Doe is a resident of Cook County, Illinois.

3. Defendant Mohammed is a nurse who works in the dispensary at the Cook County Jail. Nurse Mohammed was working at the Cook County Jail on July 9, 2019. Upon information and belief, Nurse Mohammed is a resident of Cook County, Illinois.

4. Defendant Nurse Jane Doe is a nurse who works at the Cook County Jail. Nurse Jane Doe was working at the Cook County Jail at least from July 2, 2019, to July 19, 2019. Upon information and belief, Nurse Jane Doe is a resident of Cook County, Illinois.

5. Defendant Marty Callahan is a physician assistant (P.A. Callahan), who works at the Cook County Jail. Defendant Callahan was working at the Cook County Jail on or about July 18, 2019. Upon information and belief, Defendant Callahan is a resident of Cook County, Illinois. Collectively each of the above-named individual defendants are referred to as the "Individual Defendants."

6. Defendant Cook County is a local public entity under the laws of the State of Illinois. Cook County, through the Cook County Sherriff's Office, operates the Cook County Department of Corrections and the Cook County the Jail. Defendant Cook County employs each of the Individual Defendants.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983. Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

8. Defendants, upon information and belief, all reside in this District and all of the tortious events alleged herein took place within this District. Accordingly, this Court has personal jurisdiction over each defendant, and venue is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9. Plaintiff Romiro Rodriguez is a pretrial detainee. He is currently in the custody of the Defendant Cook County Department of Corrections at the Cook County Jail. On July 2, 2019, Mr. Rodriguez was housed in Division 6 of the Jail.

2

**The Initial Slip and Fall**

10. In the late morning of July 2, 2019, a movie was being shown to detainees. Lights were dimmed in the area while the movie was playing.

11. Mr. Rodriguez was not watching the movie but was instead nearby in a waiting room, adjacent to the barber shop. When Mr. Rodriguez was walking from the waiting room into the barber shop, he slipped on the floor, which was wet. Mr. Rodriguez slipped and awkwardly fell to the ground. He hit the ground hard.

12. As a result of his fall, Mr. Rodriguez injured his neck, back, collarbone, knee and arm. His injuries, particularly to his knee, back, and collarbone were severe enough to cause Mr. Rodriguez immediate and severe pain.

**The First Trip to the Dispensary**

13. The correctional officer on duty in the area became aware of Mr. Rodriguez's injuries and sent him to the dispensary.

14. Upon arriving at the dispensary, Mr. Rodriguez encountered the Defendant Paramedic John Doe. Mr. Rodriguez explained to Paramedic Doe what had happened and told him about the nature and extent of his injuries and the extreme pain that he was experiencing as a result of those injuries. He explained that he had an "electric" feeling in his back and that he could not move his arm.

15. Despite hearing that Mr. Rodriguez's was experiencing severe pain, the only medical treatment Paramedic Doe provided was Advil. He told Mr. Rodriguez "you'll be all right." Mr. Rodriguez was not "all right."

16. Upon learning that he would only receive Advil despite the severe pain he was experiencing, Mr. Rodriguez specifically asked Paramedic Doe to be sent to Cermak to be examined and for further appropriate medical treatment.

3

17. Despite this request, Paramedic Doe refused to send Mr. Rodriguez to Cermak to be examined. Paramedic Doe told Mr. Rodriguez that this refusal was because the doctor who was then working at Cermak and would examine him and return him to the Cook County Jail without further treatment.

18. Upon information and belief, Paramedic Doe said this based on the well-known reputation of the doctor working at Cermak at the time, Dr. Yu. Upon information and belief, Dr. Yu's reputation for refusing to provide adequate medical care to pretrial detainees exhibiting symptoms of severe pain is well known and is known to the defendant Cook County. Despite knowing of Dr. Yu's reputation of refusing to provide adequate medical treatment to detainees like Mr. Rodriguez, Cook County continued to employ Dr. Yu and thus tacitly condoned his practice of refusing to provide adequate medical treatment.

### Ensuing Requests for Adequate Medical Care

19. In the days following Mr. Rodriguez's accidental slip and fall, he continued to request medical treatment, specifically, among other things, he continued to request to be seen by a doctor and continued to request medication to treat his severe pain.

20. For a week, from July 2, 2019, to July 9, 2019, Mr. Rodriguez requested medical treatment, including requesting medication for his severe pain, but did not receive any such treatment. His requests, among other things, were conveyed in grievances that he filled out and submitted.

21. During this time period, a nurse (Defendant Nurse Jane Doe) would visit detainees and distribute medication to those to whom such medications had been prescribed. Upon information and belief, Defendant Nurse Jane Doe is one of the nurses who visits detainees to provide medication.

4

22. Repeatedly between July 2, 2019, and July 9, 2019, Mr. Rodriguez requested medication for the severe pain he was experiencing, but the Defendant Nurse Jane Doe refused to provide him any such medication.

### Second Visit to the Dispensary

23. On July 9, 2019, Mr. Rodriguez was finally allowed to return to the dispensary where he was seen by Defendant Nurse Mohammed. Mr. Rodriguez explained to Nurse Mohammed what had happened to him on July 2, and indicated to her that he was still in severe pain and required medical attention.

24. Despite hearing of Mr. Rodriguez's severe pain and various injuries, Nurse Mohammed examined and recorded Mr. Rodriguez's vital signs, which she reported as "fine," told him to take his pain medication. In response to Mr. Rodriguez explaining his injuries and pain, Nurse Mohammed told him that she did not believe what he was reporting. She told him that the basis for not believing him was that a week had passed since he fell and that his "vitals were fine." Nurse Mohammed did not request that x-rays be taken. She did not perform any orthopedic examination. Beyond telling him to take his pain medication, Nurse Mohammed otherwise refused any further medical treatment and sent Mr. Rodriguez back to his tier.

25. From the time that he saw Nurse Mohammed on July 9, 2019, and the time he returned for a third time to the dispensary on July 18, 2019, Mr. Rodriguez continued to request but continued to be denied pain medication by Defendant Nurse Jane Doe.

### Third Visit to the Dispensary

26. On July 18, 2019, Rodriquez again visited the dispensary. He was seen by Defendant P.A. Mary Callahan. Mr. Rodriguez told Defendant P.A. Callahan of the continuing severe pain he was experiencing in his neck, back, collarbone and knee as a result of his slip and fall on July 2, 2019.

5

27. In response to Mr. Rodriguez explaining his injuries and pain, Defendant P.A. Callahan told him that the pain he was experiencing was due to arthritis and his being overweight. Defendant P.A. Callahan did not perform any orthopedic examination of Mr. Rodriguez or order x-rays to arrive at this conclusion.

### X-Rays of Mr. Rodriguez's Collarbone Reveal a Hairline Fracture

28. On July 19, 2019, Mr. Rodriguez finally had his collarbone x-rayed. Upon information and belief, those x-rays revealed that he had suffered a fracture to his collarbone. On July 19, 2019, however, he was not further examined as to the injuries sustained to his neck, back, and knee.

29. Further, beyond periodic dispensation of Advil, Mr. Rodriguez did not receive any medical treatment for his injuries or the severe pain he experienced, and still experiences as a result of those injuries.

### Severity and Extent of Mr. Rodriguez's Injuries

30. As a result of his slip and fall, Mr. Rodriguez injured his neck, back, collarbone, and knee. These injuries, particularly to his back and knee, have caused him considerable pain. The pain he suffers is ongoing and severe. It has disrupted his ability to sleep. Mr. Rodriguez routine wakes at 3 a.m. and is unable to get back to sleep as a result of the pain – untreated pain – that he is experiencing. He walks with a limp. His back is in constant pain, often with a feeling of sharp pain and routinely with a tingling or electric feeling.

31. Prior to coming to the Cook County Jail, Mr. Rodriguez worked as, among other things, a roofer, doing gutter and roofing work. He spent considerable time on his feet, including climbing on and standing on ladders. His mobility was a key asset in his occupational livelihood.

6

32. As a result of his injuries, ensuing pain, and the defendants' failure to provide adequate medical attention, he continues to suffer pain, is limited in his ability to walk, climb ladders and has lost considerable agility from the injuries and pain.

### COUNT I – DEFENDANT JOHN DOE, PARAMEDIC
### FAILURE TO PROVIDE MEDICAL CARE

33. Plaintiff Rodriguez, as described above, had serious medical needs as a result of his slip and fall within the custody of the Cook County Department of Corrections. The extent and severity of his injuries were, as described above, substantial and continuing.

34. Defendant John Doe, the paramedic knew of Mr. Rodriguez's serious injuries and pain, yet was deliberately indifferent to these serious medical needs at least insofar as he refused to send Mr. Rodriguez to Cermak for proper examination and treatment of his severe medical condition and refused to provide other further and adequate treatment for these injuries and pain.

35. As a direct and proximate result of Defendant John Doe's deliberate indifference and denial of and refusal to provide adequate medical care to Mr. Rodriguez, his injuries remained untreated, causing him to suffer unnecessary pain and upon information. Upon information and belief, the lack of treatment to his knee, back, and other areas injured, caused him to suffer needlessly and also either delayed or permanently prevented proper healing of those injuries.

36. At all times relevant and as described above, Defendant John Doe acted under color of law in his deliberate indifference to and his denial of Mr. Rodriguez's serious medical needs.

### COUNT II - DEFENDANT NURSE MOHAMMED
### FAILURE TO PROVIDE CARE

37. Plaintiff Rodriguez, as described above, had serious medical needs as a result of his slip and fall within the custody of the Cook County Department of Corrections. The extent and severity of his injuries were, as described above, substantial and continuing.

7

38. Defendant Nurse Mohammed knew of Mr. Rodriguez's serious injuries and pain, yet was deliberately indifferent to these serious medical needs at least insofar as she failed to provide adequate and appropriate medical attention and failed to provide any medical treatment for the injuries to his knee, back, and collarbone. Instead, Defendant Nurse Mohammed told him that his "vitals were fine," which was irrelevant to his serious medical needs.

39. As a direct and proximate result of Defendant Nurse Mohammed's deliberate indifference and denial of and refusal to provide adequate medical care to Mr. Rodriguez, his injuries remained untreated, causing him to suffer unnecessary pain. Upon information and belief, the lack of treatment to his knee, back, and other areas injured, caused him to suffer needlessly and also either delayed or permanently prevented proper healing of those injuries.

40. At all times relevant and as described above, Defendant Nurse Mohammed acted under color of law in his deliberate indifference to and his denial of Mr. Rodriguez's serious medical needs.

### COUNT III – DEFENDANT NURSE JANE DOE
### FAILURE TO PROVIDE MEDICAL CARE

41. Plaintiff Rodriguez, as described above, had serious medical needs as a result of his slip and fall within the custody of the Cook County Department of Corrections. The extent and severity of his injuries were, as described above, substantial and continuing.

42. Defendant Nurse Jane Doe knew of Mr. Rodriguez's serious injuries and pain, yet was deliberately indifferent to these serious medical needs at least insofar as she failed to provide any medication for Mr. Rodriguez's pain. Instead, Defendant Nurse Jane Doe told him that was not entitled to receive any pain medication.

8

43. As a direct and proximate result of Defendant Nurse Jane Doe's deliberate indifference and denial of and refusal to provide adequate medical care to Mr. Rodriguez, his injuries remained untreated, causing him to suffer unnecessary pain.

44. At all times relevant and as described above, Defendant Nurse Jane Doe acted under color of law in his deliberate indifference to and his denial of Mr. Rodriguez's serious medical needs.

## COUNT IV – DEFENDANT MARTY CALLAHAN
## FAILURE TO PROVIDE MEDICAL CARE

45. Plaintiff Rodriguez, as described above, had serious medical needs as a result of his slip and fall within the custody of the Cook County Department of Corrections. The extent and severity of his injuries were, as described above, substantial and continuing.

46. Defendant Callahan knew of Mr. Rodriguez's serious injuries and pain, yet was deliberately indifferent to these serious medical needs at least insofar as he failed to perform any orthopedic examination of Mr. Rodriguez or order x-rays. Instead of performing such necessary and appropriate medical examinations, Defendant Callahan told him, without any medical basis, that the pain he was experiencing was due to arthritis and his being overweight.

47. As a direct and proximate result of Defendant Callahan's deliberate indifference and denial of and refusal to provide adequate medical care to Mr. Rodriguez, his injuries remained untreated, causing him to suffer unnecessary pain. Upon information and belief, the lack of treatment to his knee, back, and other areas injured, caused him to suffer needlessly and also either delayed or permanently prevented proper healing of those injuries.

48. At all times relevant and as described above, Defendant Marty Callahan acted under color of law in his deliberate indifference to and his denial of Mr. Rodriguez's serious medical needs.

## COUNT V – DEFENDANT COOK COUNTY
## POLICY OF FAILING TO PROVIDE ADEQUATE MEDICAL CARE

49. Plaintiff Rodriguez, as described above, had serious medical needs as a result of his slip and fall within the custody of the Cook County Department of Corrections. The extent and severity of his injuries were, as described above, substantial and continuing

50. Defendant Cook County knew that pretrial detainees in its custody, like Mr. Rodriguez, periodically experienced issues that required medical attention. It also knew that from time to time, these medical issues were severe, as in the case of Mr. Rodriguez and would require medical attention.

51. Despite knowing this, Defendant Cook County knowingly employed the aforementioned Dr. Yu at Cermak, who had a reputation for refusing to treat pretrial detainees, even those with severe injuries and pain, like Mr. Rodriguez.

52. Dr. Yu's reputation for not providing proper health care to detainees was so well known that paramedics working in the Cook County Jail were aware of this reputation and refused to send detainees to Cermak for treatment knowing that they would be denied medical care. Upon information and belief, Dr. Yu's reputation was based on a widespread practice of not providing adequate medical care to detainees, regardless of the severity of those injuries.

53. Upon information and belief, Cook County was aware of Dr. Yu's reputation and practice, and by continuing to employ Dr. Yu without requiring him to provide adequate medical treatment, it condoned this practice of routinely denying medical care to detainees at least while Dr. Yu was on duty and the denial of care was routine practice of the Defendant Cook County.

10

## DEFENDANT COOK COUNTY
## INDEMNIFICATION

54. The Illinois Code, specifically 745 ILCS 10/9-102, 55 ILCS 5/46-3, and 55 ILCS 5-1106, directs Defendant Cook County to pay any tort judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer such as Defendant Sheahan or his deputies acting within the scope of their employment is found liable.

55. Defendant Cook County is liable for any judgment entered against Defendants for compensatory damages and for the associated attorneys' fees and costs.

56. If this Court enters judgment for compensatory damages against the individual defendants, Defendant County of Cook is liable to pay the judgment, as well as the associated attorneys' fees and costs.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff Rodriguez asks this Court to enter judgment against Defendants granting the following relief:

A. Awarding damages in an amount to be determined to compensate Mr. Rodriguez for his injuries, jointly and severally against all of the Individual Defendants;

B. Awarding punitive damages in an amount to be determined;

C. Awarding costs and reasonable attorneys' fees associated with this action; and

D. Granting such other and further relief as this Court or a jury may deem proper and just.

**JURY DEMAND**

Mr. Rodriguez demands a trial by jury.


Dated:  January 21, 2020	Respectfully submitted,

/s/ Michael La Porte
Michael R. La Porte (mrl@fg-law.com)
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL  60601
T:  312-551-9500
F:  312-551-9501

*Attorneys for Plaintiff*
*Cascades Branding Innovation LLC*