UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMIRO RODRIGUEZ (2018-0430005), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 5587 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| MS. MOHAMMAD, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Ramiro Rodriguez brings this civil rights action against Defendants Paramedic John Doe ("Paramedic Doe"), Nurse Mohammad, Nurse Jane Doe ("Nurse Doe"), Physician Assistant Marty Callahan ("P.A. Callahan"), and Cook County (the "County") pursuant to 42 U.S.C. § 1983. Rodriguez claims Defendants denied him medical treatment for injuries he sustained while incarcerated at the Cook County Jail. Rodriguez brings claims for failure to provide medical care against all Defendants and also seeks indemnification from the County for any judgment entered against any of the individual Defendants. The County has filed a motion to dismiss Rodriguez's *Monell* claim. Because Rodriguez has sufficiently met his pleading burden with respect to his *Monell* claim for deliberate indifference against the County, the Court denies the County's motion to dismiss and allows Rodriguez's claim to proceed.

## BACKGROUND[1]

On July 2, 2019, Rodriguez was a pretrial detainee at the Cook County Jail housed in Division 6-2K-9-1. That morning, some detainees in his division were watching a movie with the lights dimmed. While walking from a nearby waiting room into the adjacent barber shop,

---

[1] The Court takes the facts in the background section from Rodriguez's amended complaint and presumes them to be true for the purpose of resolving the County's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Rodriguez slipped and fell onto the wet floor. He suffered injuries to his neck, back, collarbone, knee, and arm, which caused him immediate and severe pain.

Upon becoming aware of Rodriguez's injuries, the correctional officer on duty sent him to the dispensary. Rodriguez encountered Paramedic Doe and told him what happened as well as the nature and extent of Rodriguez's injuries. Rodriguez noted having extreme pain, an "electric" feeling in his back, and immobility in his arm. Doc. 20 ¶ 14. Paramedic Doe gave Rodriguez Advil and told him that "[he'll] be all right." *Id.* ¶ 15. Rodriguez asked Paramedic Doe to send him to Cook County Hospital ("Cermak") for further examination. Paramedic Doe refused to send Rodriguez to Cermak because Doe claimed the doctor working at Cermak, Dr. Yu, would examine Rodriguez and return him to the Cook County Jail without further treatment. Paramedic Doe, along with the County, knew of Dr. Yu's widespread reputation for refusing to provide adequate medical care to pretrial detainees exhibiting symptoms of severe pain. Despite this knowledge, the County continued to employ Dr. Yu and tacitly condoned his practice of refusing to provide adequate medical treatment.

From July 2 to July 9, 2019, Rodriguez continued to request medical treatment, but he did not receive any such treatment. Among other things, Rodriguez repeatedly requested medication from Nurse Doe, who visited detainees in Rodriguez's division to distribute prescribed medication. Nurse Doe refused to provide Rodriguez with any medication. On July 9, 2019, Rodriguez returned to the dispensary, where he saw Nurse Mohammad and reiterated his enduring severe pain and need for medical attention. Mohammad reported his vital signs as "fine," told him to take his pain medication, and stated that she did not believe his reported pain given that a week had passed and his vitals were fine. *Id.* ¶ 24. She did not perform an

2

orthopedic examination or request x-rays.  After returning to his division, Rodriguez continued to request pain medication but Nurse Doe always denied his requests.

On July 18, 2019, Rodriguez made a third visit to the dispensary and saw P.A. Callahan. Without performing an orthopedic examination or ordering x-rays, P.A. Callahan told Rodriguez that his pain was due to arthritis and being overweight.  On July 19, 2019, Rodriguez had his collarbone x-rayed, which revealed that he had suffered a fracture.  Rodriguez did not receive any further examination of the injuries sustained to his neck, back, and knee nor did he ever receive medical treatment for his injuries or severe pain beyond periodic dispensation of Advil.

Rodriguez continues to experience ongoing and severe pain, including disrupted sleep, a limp while he walks, and a feeling in his back of sharp pain and tingling.  Prior to his detention, Rodriguez worked as a roofer and spent considerable time on his feet and climbing ladders.  As a result of his injuries and enduring pain, Rodriguez's limited mobility now threatens his occupational livelihood.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Rodriguez brings a *Monell* claim against the County, alleging that the County maintained a policy, practice, or custom of providing deliberately indifferent medical treatment to detainees. The County seeks dismissal of this *Monell* claim, arguing that Rodriguez has not adequately alleged facts allowing the Court to draw a reasonable inference that the County maintains such a policy, custom, or practice.

To pursue a claim for inadequate medical care, a pretrial detainee must allege facts indicating that he is suffering from a serious medical need and that defendants (1) acted purposefully, knowingly, or recklessly when considering the consequences of their conduct in regard to this medical need and (2) demonstrated objectively unreasonable conduct. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018). Rodriguez cannot seek to hold the County liable based on *respondeat superior*. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). But the County may be held liable under § 1983 for deliberate indifference pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). To state a *Monell* claim, Rodriguez must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). To adequately allege a *Monell* policy or practice claim, Rodriguez must "plead[ ] factual content that allows the Court to draw the reasonable inference that [the County]

4

maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (the policy or practice "must be the direct cause or moving force behind the constitutional violation").

The County first argues that Rodriguez's allegations do not rise above a speculative level and rely only on allegations made on "information and belief." But the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Instead, *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Further, courts liberally view *Monell* pleadings based on "information and belief" where they concern matters "peculiarly within the knowledge of the defendants." *Lanton v. City of Chicago*, No. 16 C 2351, 2017 WL 569155, at *4 (N.D. Ill. 2017) (quoting *Brown v. Budz*, 398 F.3d. 904, 914 (7th Cir. 2005)). Therefore, the fact that Rodriguez includes allegations based on "information and belief" does not require dismissal of the *Monell* claim at this time.

The County also argues that Rodriguez cannot show that it maintained a widespread custom or practice because the pleaded facts are limited to a single individual during Dr. Yu's specific work hours and Rodriguez has not provided any affidavits from County employees to support his *Monell* claim. To prove his *Monell* claim, Rodriguez will need to demonstrate "a widespread practice that permeates a critical mass of an institutional body," supported, for

5

example, by other detainees who received inadequate medical care or affidavits from County employees suggesting such a practice or policy. *See Rossi*, 790 F.3d at 737 (emphasis omitted). But the County asks too much of Rodriguez's amended complaint; at the motion to dismiss stage, a plaintiff may rely on personal experience instead of pleading examples of other individuals' experiences. *White*, 829 F.3d at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"). Post-*White* courts analyzing *Monell* claims "have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) (collecting cases). Rodriguez's "pleading burden should be commensurate with the amount of information available" to him before discovery. *Olson v. Champaign Cty.*, 784 F.3d 1093, 1100 (7th Cir. 2015) (citation omitted). At this stage, Rodriguez's allegation that Paramedic Doe did not send him to Cermak because of known deficiencies in Cermak's treatment of detainees suffices to suggest that the alleged deliberate indifference was a widespread issue instead of a random event. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (a plaintiff "need only allege a pattern or practice, not put forth a full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists" at the pleading stage).

Finally, the County argues that Rodriguez's allegations do not allow for a plausible inference linking Rodriguez's alleged injury, Dr. Yu's alleged reputation, and the County's awareness that detainees did not receive adequate medical care. But the Court finds that Rodriguez has included sufficient factual allegations to put the County on notice of its alleged wrongdoing. His allegations indicate that the County knew that pretrial detainees in its custody

6

periodically experienced severe issues that required medical attention, yet knowingly employed Dr. Yu at Cermak, who had a reputation for refusing to treat pretrial detainees, even those with severe injuries and pain, like Rodriguez. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) ("Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk."); *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012) (disregard of "prolonged, unnecessary pain" can be the basis of a constitutionally inadequate medical care claim). That paramedics working at the Cook County Jail refused to send Rodriguez to Cermak for treatment knowing that Dr. Yu would provide inappropriate medical care suggests a well-settled practice of failing to provide adequate medical care to detainees. *See Woodward*, 368 F.3d at 927 (a plaintiff can establish municipal liability indirectly "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers" (citation omitted)). Although Rodriguez will have to marshal additional evidence to prevail on his claim, at this stage, the Court finds his allegations sufficient to withstand the County's motion to dismiss. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage [], the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims.").

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Cook County's motion to dismiss [30].

Dated: September 29, 2020

_____
SARA L. ELLIS
United States District Judge